IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. RDB-21-163 |
| | * | |
| BENJAMIN PAZ, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ****** | | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE PRIVILEGED TESTIMONY**

The United States of America, by and through its undersigned counsel, respectfully submits this response to Defendant's motion *in limine* to exclude what it believes to be privileged testimony (ECF No. 64). In its motion, Defendant seeks to extend a testimonial communications privilege to a non-attorney Accredited Representative, Celia Rivas, who the government plans to call during its case in chief, with regards to any communications between her and Defendant Benjamin Paz. While as a general matter the government maintains such communications could not be the found to be privileged without fact-intensive findings by this Court, in this case the government does not plan to elicit the substance of any communications between Rivas and Defendant during its planned direct examination. Should Defendant open that door during cross examination, however, the government would reserve its right to extend its inquiry into such communications.

**DISCUSSION**

The government disputes Defendant's contention that an attorney-client communications privilege automatically attaches to his or her Accredited Representative in immigration matters. A charitable organization Accredited Representative is just one of the many types of individuals who can represent an individual in various immigration matters, two categories of such authorized

1

representatives require no legal training whatsoever. Under 8 C.F.R. § 1292.1, "(a) A person entitled to representation may be represented by any of the following: (1) Attorneys in the United States….(2) Law students and law graduates not yet admitted to the bar….(3) **Reputable individuals**….(4) Accredited representative[s, and]….(5) **Accredited officials** [of the government to which an alien owes allegiance]" (emphasis added). Moreover, the proposition that the regulatory scheme intended Accredited Representatives to be considered equivalent to attorneys in the scope of their representation is undermined by C.F.R. § 1292.12(a)(3), which affirmatively precludes any licensed, practicing attorney from being designated as an Accredited Representative, evincing a clear intent to keep the two statuses separate and distinct.

The principal case on which Defendant relies, *Escamilla v. SMS Holdings Corp.*, No. CV 09-2120 (ADM/JSM), 2011 WL 13243580 (D. Minn. June 28, 2011*), aff'd*, No. CIV. 09-2120 ADM/JSM, 2011 WL 5025254 (D. Minn. Oct. 21, 2011), does not support so broad a proposition. That case had a very narrow holding, specifically, "that **because Zuniga believed that she was being represented by an attorney during the U–Visa process** and because Anderson is an accredited representative authorized by federal law to practice in administrative legal immigration proceedings, **communications** between Anderson and Zuniga, **for the sole purpose of receiving legal advice in the immigration context**, are privileged." *Id.* at *8 (emphasis added).

Moreover, every case to which *Escamilla* cited in support of extending the privilege was a civil case, and it distinguished criminal cases where courts appeared far more reluctant to find privileges. These include *United States v. Horvath*, 731 F.2d 557 (8th Cir. 1984), which the *Escamilla* opinion cited for the proposition that "the attorney-client privilege applies only to confidential communications made to facilitate legal services, and does not apply where a lawyer acts as a scrivener or business advisor" and *United States v. Arango–Chairez*, 875 F. Supp. 609

2

(D. Neb. 1994), *aff'd by* 66 F.3d 330 (8th Cir. 1995), where a District Court hearing a criminal case had overridden a claim of defendant's claim of privilege between him and an Accredited Representative and allowed the latter to testify about his representation of the defendant going into his removal hearing where it reasoned that "the defendant was not even aware that a legal professional was present."

Both of those criminal cases *Escamilla* distinguished are instructive here, as there is no evidence in the record from which a Court could infer that Defendant Paz believed he was asking for legal advice or representation in an adversarial proceeding.  Ms. Rivas' "representation" of Defendant in this context appears to be limited to assisting him with filling out forms with information he provided her in response to application form questions and assembling documents supporting his naturalization petition. She did not accompany him to his immigration interview. Nowhere did she make any legal arguments on his behalf, such as within a letter accompanying the N-400.  For these reasons, she appears to have acted primarily in the "scrivener" function akin to where the Eighth Circuit found in *Horvath* that the attorney-client privilege did not attach. *Horvath*, 731 F.2d at 561 (finding as unprivileged attorney's testimony regarding the client's requests for attorney to collect and distribute monies for him because those communications were not made for the purpose of requesting or dispensing legal advice.)

While the government acknowledges that on different facts—such as Defendant's engagement of Ms. Rivas to advise him before, and represent him at, an immigration court in a contested removal hearing where he also believed her to be a practicing attorney and subjectively believed the communications were covered by a privilege—there may be some basis to find a communications privilege exists with such an Accredited Representative. Those are the not the facts here, however.  To the contrary, Defendant's relationship with Ms. Rivas in this instance

was more similar to a taxpayer engaging an accountant or tax-preparer to prepare his or her tax return in compliance with legal filing requirements. In such a relationship, the client expects the tax preparer to arrange the information in a legally sufficient manner and the accountant to apply his/her knowledge of the tax laws to the information provided. The accountant may also dispense general advice provided on strategies for maximizing tax advantageous spending going forward. That latter advice would appear equivalent to what an Accredited Representative might provide for conduct during the Immigration interview, e.g., be respectful, non-combative, tell the truth, etc. But, in the criminal tax context, the Supreme Court has found there is no testimonial "accountant's privilege." *See United States v. Arthur Young & Co.*, 465 U.S. 805, 817 (1984) ("no confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases.") And, more generally, the Supreme Court has acknowledged the general proposition that new privileges are disfavored. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 690 n.29 (1972) ("The creation of new testimonial privileges has been met with disfavor by commentators since such privileges obstruct the search for truth. Wigmore condemns such privileges as "so many derogations from a positive general rule [that everyone is obligated to testify when properly summoned]" and as "obstacle[s] to the administration of justice." 8 J. Wigmore, EVIDENCE § 2192 (McNaughton rev. 1961). His criticism that "all privileges of exemption from this duty are exceptional, and are therefore to be discountenanced," *id*., at § 2192, p. 73 (emphasis in original) has been frequently echoed.")

All that said, in this case the government does not plan to elicit testimony from Ms. Rivas on the substance of any communications made during the preparation and submission of Defendant's Application for Naturalization, Form N-400, in the weeks leading up to its completion in April 2014. The government has no reason to believe that Ms. Rivas has any notes or particular

recollection of her interactions with Defendant during that period. Rather, the government plans to ask Ms. Rivas about how her organization screens their naturalization clients—nearly all of whom are native Spanish speakers—for English fluency, how she explains the questions on the N-400 while she prepares the forms for them, how she explains the perjury penalty statement and ensures understanding before her clients sign, and other matters that apply generally to the services she provides clients rather than to this specific Defendant. This evidence will be offered to show that it is likely Ms. Rivas conducted her interactions with Defendant consistent with her usual practice and thus make the jury more likely to find that Defendant understood that he was required to truthfully disclose the adverse information about his prior crimes and failed to do so knowingly.

## **CONCLUSION**

Because the government does not propose to inquire into areas the Defense asserts are protected by privilege, the Court should deny Defendant's motion *in limine* as moot.

                                          Respectfully submitted,

                                          Erek L. Barron
                                          United States Attorney


By: _____/s/_____
      Adam K. Ake
      Michael F. Aubin
      Assistant United States Attorneys

## CERTIFICATE OF SERVICE

This is to certify that on September 25, 2022, a copy of the foregoing Government's Response to Defendant's Motion was served via electronic case filing upon the following:

Elizabeth Lopez
Assistant Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201

By: _____/s/_____
      Adam K. Ake
      Assistant United States Attorney